ROBERT C. MOEST, Of Counsel (State Bar No. 62166)
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone:   (310) 915-6628
Email: RMoest@gmail.com

*Co-Lead Counsel for California Federal Plaintiffs*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| IN RE THE HONEST COMPANY, INC. DERIVATIVE LITIGATION | Lead Case No. 2:21-cv-09281-MCS-PLA |
| This Document Relates to:<br>All Actions | Date: April 27, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7C<br>Judge: The Honorable Mark C. Scarsi<br><br>CASE FILED: November 29, 2021 |

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARYAPPROVAL OF DERIVATIVE SETTLEMENT</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 3

III.    PROCEDURAL BACKGROUND ...................................................................... 4

        A.      The Derivative Actions ............................................................................ 4

                1.      The California Federal Action ................................................... 4

                2.      The California State Action ...................................................... 5

                3.      The Delaware Federal Action ................................................... 6

        B.      The Demands............................................................................................ 6

        C.      Settlement Negotiations .......................................................................... 7

IV.     TERMS OF THE PROPOSED SETTLEMENT ................................................ 8

V.      THIS COURT SHOULD GRANT PRELIMINARY APPROVAL ................. 14

        A.      Legal Standards for Preliminary Approval ............................................ 14

        B.      The Settlement Satisfies the Standards for Preliminary Approval .......... 16

                1.      The Settlement Confers Substantial Benefits upon the
                        Company and Current Honest Stockholders ............................... 16

                2.      Strength of the Claims and the Costs and Risks of Further
                        Litigation .................................................................................. 17

                3.      The Proposed Settlement is a Product of Informed, Arm's-
                        Length Negotiations .................................................................. 20

VI.     NOTICE SATISFIES RULE 23.1(c) AND DUE PROCESS.......................... 21

VII.    PROPOSED SCHEDULE ................................................................................. 23

VIII.   CONCLUSION .................................................................................................. 24

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Allred v. Walker*,
  19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 U.S. Dist. LEXIS 236249 (S.D.N.Y.
  Dec. 9, 2021) ..................................................................................................22

*Basaraba v. Greenberg*,
  No. 2:13-cv-05061-PSG (SHx), 2014 WL 12591677 (C.D. Cal. Nov. 10, 2014)....14

*Booth v. Strategic Realty Trust Inc.*,
  No. 13-cv-04921-JST, 2015 WL 3957746 (N.D. Cal. June 28, 2015) ....................15

*Bushansky v. Armacost*,
  2014 WL 2905143 (N.D. Cal. June 25, 2014) ......................................................23

*In re AOL Time Warner S'holder Deriv. Litig.*,
  Master File No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260 (S.D.N.Y.
  Sep. 6, 2006)......................................................................................................19

*In re Apollo Grp., Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd &
  remanded*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010)..................19

*In re Apple Computer, Inc. Deriv. Litig.*,
  C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)....17

*In re Biopure Corp. Deriv. Litig.*,
  2009 U.S. Dist. LEXIS 148025 (D. Mass. Jul. 24, 2009)......................................22

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  No. 08-cv-4966 SC, 2011 WL 13156644 (N.D. Cal. Aug. 26, 2011) .....................14

*In re Ceradyne, Inc.*,
  No. SACV 06-919-JVS (PJWx), 2009 WL 10671494 (C.D. Cal. June 9, 2009)....15,
  16

*In re Fab Universal Corp. S'holder Derivative Litig.*,
  148 F. Supp. 3d 277 (S.D.N.Y. Nov. 17, 2015)....................................................18

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
  2015 U.S. Dist. LEXIS 32212 (N.D. Cal. Mar. 13, 2015).....................................15

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

*In re Lloyd's Am. Tr. Fund Litig.*,
   96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002).....19

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 U.S. Dist. LEXIS 86295 (C.D. Cal. June 6, 2013) .........................................22

*In re NVIDIA Corp. Deriv. Litig.*,
   No. C-06-06110-SBA-(JCS), 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec.
   19, 2008)....................................................................................................16, 18

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ..................................................................................18, 20

*In re Pinterest Deriv. Litig.*,
   2022 U.S. Dist. LEXIS 28366 (N.D. Cal. Feb. 16, 2022)........................................15

*In re PMC-Sierra, Inc. Deriv. Litig.*,
   No. C-06-05330-RS, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010).........22

*In re Rambus Inc. Deriv. Litig.*,
   No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20,
   2009)........................................................................................................... 22

*In re Walt Disney Co. Derivative Litig.*,
   907 A.2d 693 (Del. Ch. 2005).................................................................................18

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
   No. 16-cv-05541-JST, 2019 U.S. Dist. LEXIS 240004 (N.D. Cal. May 14,
   2019)........................................................................................................................18

*Kamen v. Kemper Fin. Servs. Inc.*,
   500 U.S. 90 (1991) ...................................................................................................18

*Lloyd v. Gupta*,
   No. 15-cv-04183-MEJ, 2016 U.S. Dist. 96166 (N.D. Cal. Jul. 22, 2016)...............21

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983)...................................................................................17

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) .................................................................................................16

*Moore v. Verb Tech. Co., Inc.*,
   CV 19-8393-GW-MAAx, 2021 WL 11732976 (C.D. Cal. Mar. 1, 2021) .........15, 20

iii

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

*Nat'l Rural Telecomm'ns Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................15, 21

*Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*,
   No. 3443–VCP, 2009 WL 353746 (Del. Ch. Feb. 12, 2009), *aff'd*, 977 A.2d 899
   (Del. 2009)..........................................................................................................18

*Van Der Gracht Rommerswael v. Auerbach*,
   SACV 18-00236 AG (JCGx), 2018 U.S. Dist. LEXIS 224500 (C.D. Cal. Nov. 5,
   2019)....................................................................................................................16

## **Rules**

Fed. R. Civ. P. 23.1(c) ......................................................................................14, 21

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23.1(c), plaintiffs Hayato Ono ("Ono") and Mike Wang ("Wang" and together with Ono, the "California Federal Plaintiffs") in the above-captioned consolidated stockholder derivative action ("California Federal Action") respectfully submit this Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Derivative Settlement ("Motion").

## I.    **INTRODUCTION**

On July 20, 2023, the parties in the California Federal Action and the California State Action[1] participated in a mediation before David Murphy, Esq. of Phillips ADR Enterprises, a highly experienced and nationally reputed mediator. While no final resolution was reached at the mediation, settlement discussions continued, with the other Stockholders joining these discussions and the Settling Parties exchanging draft settlement proposals and counterproposals between 2023 and 2025. These good-faith, arm's length negotiations by experienced and well-informed counsel, over the course of more than two years, culminated in the Settling Parties agreeing in principle on the substantive terms of a proposed settlement on July 29, 2025, as reflected in the accompanying Stipulation (the "Settlement"). The Settlement seeks to resolve claims in each of the Derivative Matters brought by the Stockholders, who assert claims for, *inter alia*, breach of fiduciary duty against the Individual Defendants, alleging that they made and/or caused Honest to make a series of materially false and misleading statements to the public regarding, *inter alia*, Honest's financial health and the demand for its products, which allegedly harmed Honest. *See generally*, Stip., §I.

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated March 12, 2026 ("Stipulation" or "Stip.").

1

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

The Settlement guarantees substantial and material benefits for Honest through the adoption of corporate governance reforms that significantly enhance Honest's internal controls and are designed to ensure the wrongdoing alleged in the Derivative Matters does not recur ("Reforms").  *See* Stipulation, Exhibit A.  The Reforms will strengthen Honest's operations, and by extension, enhance the value of Honest through improved compliance controls and better decision-making, and help foster investor confidence in the accuracy of Honest's public disclosures. The Reforms include, *inter alia*, (i) new responsibilities for senior management to oversee inventory control and proper record-keeping; (ii) enhancements to the Disclosure Committee to ensure that disclosures are concise and timely and in full compliance with the requirements of applicable state and federal laws; (iii) enhanced duties for the General Counsel ("GC"), which include direct quarterly reporting to the Audit Committee to facilitate Board oversight; (iv) enhancements to the Audit Committee, including the appointment of a separate Board-level Risk Management Committee, or the responsibilities thereto to be added to the Audit Committee Charter; (v) enhancements to the Compensation Committee, including stricter requirements for determining compensation based on an executive's performance; (vi) stricter director independence requirements; (vii) additional director education; (viii) mandatory employee training for risk assessment and compliance; and (ix) enhancements to the Whistleblower Policy that improve the facilitation of employee reporting of any alleged ethics or legal violations. *See generally* Stip., Ex. A.

Honest's Board, in a good faith exercise of business judgment, has determined that: (i) the Settlement confers a substantial benefit upon Honest and Current Honest Stockholders; and (ii) the Settlement, and each of its terms, is in all respects fair, reasonable, and in the best interest of Honest and Current Honest Stockholders. *Id.* at §IV.

2

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

At the preliminary approval stage, the Court need only conclude that a proposed derivative settlement is within the range of what might ultimately be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Current Honest Stockholders and a settlement hearing should be scheduled to consider final approval of the Settlement. The Settlement is well within the range of what is fair, reasonable, and adequate, and meets this standard for preliminary approval. Accordingly, California Federal Plaintiffs respectfully request that the Court enter the Settling Parties' [Proposed] Preliminary Approval Order (substantially in the form of Exhibit B to the Stipulation, and separately submitted concurrently herewith).

## II.    FACTUAL BACKGROUND

Honest sells clean and innovative household and personal care products designed for lifestyle-conscious consumers. ¶2.[2] It went public with its initial public offering ("IPO") in May 2021. ¶1. In its IPO documents ("Offering Documents"), Honest represented to investors that it was poised for continued growth. ¶114. Stockholders allege that, leading up to and through the date of the IPO, the Offering Documents were materially false and misleading, and failed to disclose material facts, including that: (i) stockpiling of Honest's products during the COVID-19 pandemic significantly impacted Honest's financial results; (ii) despite widespread awareness of stockpiling behavior during the early stages of the pandemic, Honest nevertheless began accelerating its development timeline for certain product launches; (iii) Honest was experiencing decelerating demand for its products, in part due to the negative consumer experiences with its Clean Conscious Diaper product; and (iv) as a result of the foregoing factors, Honest's financial results were likely to be adversely impacted. ¶115.

---

[2] Unless otherwise noted, references herein to "¶__" or "¶¶__" are to the Verified Shareholder Derivative Complaint filed by plaintiff Ono on November 29, 2021. ECF No. 1.

3

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

The truth emerged on August 13, 2021, when Honest reported a net loss of $20 million for the quarter ended June 30, 2021, a substantially larger loss compared to the quarter ended June 30, 2020, where Honest faced a net loss of only $400,000. ¶125. These losses, coupled with declining revenue in Honest's "Diapers and Wipes" and "Household and Wellness" categories, led to a significant decrease in Honest's share price on August 19, 2021, with the stock closing at $9.16 per share, representing a 43% decrease in value from the IPO price. ¶126-29.

## III.    PROCEDURAL BACKGROUND

### A.    The Derivative Actions

#### 1.    The California Federal Action

On November 29, 2021, plaintiff Ono filed a complaint on behalf of Honest against the Individual Defendants in the California Federal Action, formerly captioned *Ono v. The Honest Company, Inc., et al*, Case No. 2:21-cv-09281 ("*Ono* Action"), asserting claims for breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets, and for contribution under Sections 11(f) of the Securities Act of 1933 ("Securities Act") and 21D of the Securities Exchange Act of 1934 ("Exchange Act"). (ECF No. 1).

On December 17, 2021, plaintiff Ono and Defendants filed a stipulation to stay the *Ono* Action until any of the defendants filed an answer in the related securities class action pending in the Court, which named the Company and several of the Individual Defendants as defendants, captioned *In re Honest Company, Inc. Securities Litigation*, Case No. 2:21-cv-07405-MCS-PLA (C.D. Cal.) ("Securities Class Action"). (ECF No. 13).

Also on December 17, 2021, plaintiff Wang filed a complaint on behalf of Honest against the Individual Defendants alleging facts and claims substantially similar to those in the *Ono* Action, captioned *Wang v. Vlahos et al.*, Case No. 2:21-cv-09763 ("*Wang* Action"). (*Wang* Action, ECF No. 1).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

On December 28, 2021, the Court issued an order staying the *Ono* Action pending resolution of the Motion to Consolidate Cases in the Securities Class Action. (ECF No. 17).

On January 20, 2022, the Court consolidated the *Ono* and *Wang* Actions, appointed co-lead counsel for plaintiffs, and stayed the California Federal Action ("Stay Order"). (ECF No. 20).

On August 17, 2022, defendants in the Securities Class Action filed an answer, terminating the Stay Order in the California Federal Action. (Securities Class Action, ECF No. 80).

On September 21, 2022, the parties filed a stipulation to extend the stay in the California Federal Action until: (i) the resolution of all motions for summary judgment in the Securities Class Action, or (ii) the expiration of the deadline for such motions without any such motion being filed, which the Court so-ordered on September 28, 2022. (ECF Nos. 23, 25).[3]

### 2.     The California State Action

On January 3, 2022, the California State Plaintiffs filed a complaint in the California State Court on behalf of Honest against the Individual Defendants asserting claims for breaches of fiduciary duty under Delaware law. Stip., §I.A.ii.

On January 21, 2022, the California State Court issued an order staying the California State Action until any of the defendants filed an answer in the Securities Class Action. *Id.*

On September 22, 2022, following the filing of defendants' answers in the Securities Class Action, the California State Court issued an order staying the

---

[3] The parties to the Securities Class Action executed a Stipulation of Settlement on March 11, 2025. (Securities Class Action, ECF No. 304-3). On July 29, 2025, the court in the Securities Class Action issued a Final Order and Judgment approving the settlement. (Securities Class Action, ECF No. 324).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

California State Action pursuant to substantially the same terms as the California Federal Action. *Id.*

### 3.    The Delaware Federal Action

On October 19, 2022, plaintiff Butler filed a complaint in the Delaware Federal Court on behalf of Honest against certain Individual Defendants asserting state and federal claims. Stip., §I.A.iii.

Thereafter, the Delaware Federal Action was stayed pursuant to substantially the same terms as the California Federal Action and the California State Action, as discussed above. *Id.*

On February 9, 2023, the Delaware Federal Court administratively closed the Delaware Federal Action and directed the parties to file a joint status report. *Id.*

### B.    The Demands

On August 5, 2022, stockholder Desai served a pre-suit litigation demand under Delaware law on the Board to investigate and bring action against the Individual Defendants for, *inter alia*, breaches of their fiduciary duties arising out of substantially the same alleged misconduct as set forth in the Derivative Actions.  Stip., §I.B. On July 13, 2023, after several letters between counsel for Desai and counsel for a committee formed by the Board ("Committee"), counsel for the Committee stated that the Committee was deferring its investigation until the related class and Derivative Matters proceeded further and possibly concluded. *Id.*

On October 12, 2022, stockholder Ford served a pre-suit litigation demand under Delaware law on the Board similar to stockholder Desai. *Id.* Counsel for Ford thereafter received substantially similar correspondence from counsel for the Committee, advising Ford that the Committee was deferring its investigation and response to Ford's demand indefinitely in favor of other pending related matters. *Id.*

After further correspondence between counsel for stockholders Desai, Ford, and counsel for the Committee, respectively, regarding the Company's ongoing deferral of

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

its investigations and a potentially expiring statute of limitations, the Company obtained tolling agreements in order to ensure the Company's claims against the Individual Defendants would not become time-barred. *Id.* Such tolling agreements were executed in April, June, and July 2024. *Id.*

### C.    Settlement Negotiations

On or around June 27, 2023, the parties in the California Federal Action and the California State Action agreed to attend the mediation scheduled for July 20, 2023. Stip., §I.C. In furtherance thereof, on June 30, 2023, plaintiffs Ono, Wang, Bisch, and Corobana sent a joint settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address the governance deficiencies that resulted in the wrongdoing alleged in these actions. *Id.*

On July 20, 2023, the parties in the California Federal Action and the California State Action participated in the mediation with the parties in the Securities Class Action but did not reach a settlement. *Id.*

On November 14, 2023, stockholder Ford joined the settlement negotiations with plaintiffs Ono, Wang, Bisch, and Corobana. *Id.*

On February 7, 2025, plaintiff Butler sent a settlement demand letter to Defendants that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address the governance deficiencies that resulted in the alleged wrongdoing. *Id.*

On March 14, 2025, Stockholders (except plaintiff Butler) sent a joint settlement demand letter that, *inter alia*, proposed a settlement framework that included a comprehensive set of corporate governance reforms designed to address the governance deficiencies that resulted in the alleged wrongdoing. *Id.*

In the following months, the Settling Parties continued to engage in arm's-length, good faith settlement negotiations, which included exchanging settlement

7

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

proposals and counterproposals. Stip., §I.C. On July 29, 2025, the Settling Parties agreed in principle on the substantive terms of the Settlement, including the corporate governance reforms that Honest agreed to adopt as consideration for the Settlement and certain corporate governance policies and other changes enacted at Honest during the pendency of the Derivative Matters which were prompted by the Derivative Matters. *Id.*

Following the Settling Parties' agreement in principle on the substantive terms of the Settlement, the Settling Parties separately negotiated the attorneys' fees and expenses to be paid to Stockholders' Counsel in consideration of the substantial benefits achieved for the Company through their efforts. *Id.* On December 16, 2025, the Settling Parties agreed Defendants and/or their insurance carriers would pay the Fee and Expense Amount to Stockholders' Counsel, subject to Court approval.[4] *Id.*

## IV.  TERMS OF THE PROPOSED SETTLEMENT

In consideration of the Settlement, Honest will implement and maintain the Reforms outlines in Exhibit A to the Stipulation and summarized herein. *See* Stip., Ex. A. Pursuant to the Settlement, Honest is required to implement the Reforms within thirty business days of issuance of the Judgment by the Court or at the next regularly scheduled Board Meeting, which shall remain in effect for at least four years. Stip., §V, ¶2. The Reforms, described below, provide substantial benefits to Honest and its stockholders and result in stronger overall corporate governance and internal controls at Honest. *See id*.

Honest acknowledges and agrees that the Stockholders' initiation, maintenance, and settlement of the Derivative Matters was the cause of the Company's decision to

---

[4] The Court need not decide whether to approve the agreed attorneys' fees and expenses at this time, as Stockholders will provide further detail and additional supporting authorities in connection with their motion for final approval of the Settlement.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

adopt, implement, and maintain the Reforms, as set forth in § I of Exhibit A and summarized below, and that such Reforms confer substantial benefits upon Honest and Current Honest Stockholders.

The Reforms provide for, among other things, the following enhancements to the Company's corporate governance:

- Inventory Control and Proper Record-Keeping (Stip., Ex. A, §I.1. at 2-4): Honest shall bolster its inventory management controls by enacting the reforms set forth in Exhibit A to the Stipulation. Honest's Senior Vice President, Supply Chian ("SVP-SC") or another member of senior management shall be responsible for ensuring that Honest maintains complete and accurate inventory records, and shall review inventory and sales reports at least quarterly to ensure compliance with Honest's sales revenue-recognition policy and other applicable policies. The SVP-SC or other senior managements shall provide regular reports including an evaluation of Honest's inventory management policies and protocols, as well as risks related thereto. The CFO shall be responsible for assessing whether Honest's internal controls effectively contribute to the disclosure of any material risks relating to Honest's inventory management.

- Enhancements to the Disclosure Committee (Stip., Ex. A, §I.2. at 4-6): Honest shall amend the Charter of the Disclosure Committee to ensure that all disclosures Honest makes to its stockholders and/or the investing public are accurate and complete, fairly represent Honest's financial condition and operational results in all material aspects, and are made on a timely basis in accordance with all applicable laws and requirements. The Disclosure Committee shall at the bare minimum be comprised of the GC, the CFO, and at least two senior members of managements who are involved in the day-to-day oversight of the key functional areas of Honest.

To further the stated purpose of the Disclosure Committee as set forth in the amended Charter, Honest shall set supplement the duties and responsibilities of the

9

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

Disclosure Committee, as necessary, as set forth in Exhibit A to the Stipulation. The Disclosure Committee will assist Honest's officers with establishing and maintaining disclosure controls and procedures. The members of the Disclosure Committee shall oversee the production of information required to be disclosed in Honest's public filings, registration statements, stockholder correspondence, analyst and investor presentations, and other material information disseminated to Honest's stockholders, and shall review the same. The Disclosure Committee shall evaluate the materiality of information and events relating to or affecting Honest, as well as evaluating the appropriate timing and method of disclosure of material information. The Disclosure Committee shall review each Form 10-K and 10-Q filed by Honest with the SEC in conjunction with the Audit Committee, and before finalization of each Form 10-K and 10-Q, the Disclosure Committee shall make a report to the CEO, CFO, and Audit Committee or any other committee, as appropriate, detailing the Disclosure Committee's activities and recommendations. The Disclosure Committee shall timely report to the Audit Committee regarding any material disclosure issues. The Disclosure Committee will hold regular meetings, as well as *ad hoc* meetings as necessary or appropriate.

- Enhanced Duties for Honest's General Counsel (Stip., Ex. A, §I.3. at 6-7): Honest's GC shall report directly to the Audit Committee and work with the Board and the Board's committees, as necessary to facilitate the Board's oversight responsibilities. To this end, the GC will be responsible for, among other things, risk assessment, reporting of material risks, direct quarterly reporting to the Audit Committee regarding any material issues impacting the Company's business and operations, and working with applicable management and Board committees to evaluate the adequacy of Honest's internal controls related to compliance, risk management, and disclosure controls.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

- <u>Enhancements to the Audit Committee (Stip., Ex. A, §I.4. at 7-9)</u>: Honest shall amend the Charter of the Audit Committee and shall publish the amended Charter on the Investor Relations portion of Honest's website. As part of the amendments to the Audit Committee Charter, the Company shall appoint a separate Board-level Risk Management Committee, or the Audit Committee Charter shall otherwise be amended to include the responsibilities set forth in Exhibit A to the Stipulation. The Audit Committee shall be responsible for monitoring Honest's compliance with reporting requirements, as well as all internal risk assessment and internal reporting conducted by Honest employees. The Audit Committee shall report material risks to the Board and shall review quarterly reports related to the accuracy of Honest's public disclosures and material issues impacting the Company's business, operations, and prospects. The Audit Committee shall also review periodic reports from management regarding the effectiveness of Honest's policies, standards, processes, and procedures related to quality assurance and/or product safety. The Audit Committee shall review Honest's periodic public reports to ensure proper disclosure of Honest's risk management, as well as material risks and risk factors, and shall promptly report any deficiencies to the Board. The Audit Committee shall also monitor compliance with Honest's Code of Business Conduct and Ethics ("Code of Conduct").

The Audit Committee shall meet four times annually in separate executive sessions with Honest's auditors or senior members of management, and the CFO shall not be present at such meetings. The Audit Committee Chair shall report to the full Board at least quarterly. The Audit Committee shall be responsible for overseeing the work of the Disclosure Committee, including reviewing the reports of the Disclosure Committee at least quarterly. The Audit Committee shall meet at least annually with Honest's auditors to review and evaluate Honest's inventory controls and revenue recognition policies, procedures, and internal controls. All Honest employees shall be

11

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

required to cooperate with the Audit Committee's investigations, and failure to cooperate shall be grounds for discipline by the Board, which shall include, but is not limited to, termination, at the discretion of the Board. This requirement shall apply to all Company employees, including the CEO, CFO, and the Chair of the Board.

- <u>Enhancements to the Compensation Committee (Stip., Ex. A, §I.5. at 9-10)</u>: Honest shall amend the Charter of the Compensation Committee and shall publish the amended Charter on the Investor Relations portion of its website. The amended Compensation Committee Charter shall require Honest to consider a particular executive's performance as it relates to their compliance with Honest's internal policies and procedures when determining, setting, or approving short-term compensation agreements. Additionally, the amendments to the Compensation Committee Charter shall require Honest to consider the circumstances surrounding a particular executive's departure, as well as their compliance with Honest's internal policies and procedures, when determining setting, or approving termination benefits and/or separation pay to such executive.

- <u>Director Independence (Stip., Ex. A, §I.6. at 10-11)</u>: Honest shall amend its Corporate Governance Guidelines as necessary to require that at least a majority of the Board be comprised of directors who meet the criteria set forth in NASDAQ Listing Rule 5605(a)(2) for director independence, and any other statutory independence requirements, as well as the qualifications set forth in Exhibit A to the Stipulation. Employment as CEO or any other executive officer at Honest shall disqualify a director from being considered independent for a period of three years following such employment. Failure to comply with the foregoing independence requirements due to one or more vacancies on the Board shall be rectified by the Company within 135 days.

- <u>Director Education (Stip., Ex. A, §I.7. at 11)</u>: Honest's outside corporate counsel shall annually provide corporate governance training to Honest's directors.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

Such educational training may include, among other things, education on legal and regulatory compliance, risk assessment, reporting requirements, and disclosure laws, regulations, policies, and procedures. As an alternative, directors may attend a training course on Corporate Governance Guidelines and Best-in-Class Practices developed by the National Association of Corporate Directors ("NACD"), Stanford Director's College, or a similar nationally recognized corporate director education provider. All reasonable expenses for the attendance of such programs shall be covered by Honest.

- <u>Employee Training in Risk Assessment and Compliance (Stip., Ex. A, §I.8. at 11-12):</u> Honest shall amend its Code of Conduct and/or Corporate Governance Guidelines to require the CFO, GC, or other senior member of its management to develop and implement an annual employee training program. Such program will be focused on compliance, internal controls policies and procedures, compliance risk assessment, and complaint reporting and investigation. The senior management responsible for the cultivation of the foregoing employee training program shall be authorized and provided with the necessary resources to retain external consultants and vendors as necessary to aid in the cultivation thereof. Such training will be mandatory for all Honest officers and will cover Honest's Code of Conduct, Corporate Governance Guidelines, and any and all manuals or policies established by Honest concerning legal or ethical standards of conduct to be observed by Honest personnel, including the corporate governance forms discussed herein.

- <u>Enhancements to Whistleblower Policy (Stip., Ex. A, §I.9. at 12-13):</u> Honest shall amend its existing Whistleblower Policy to provide, *inter alia*, that employees shall be advised that they need not report concerns directly to Honest, and have the right to report concerns directly to the SEC, the U.S. Department of Justice, and/or other applicable regulatory agencies. Honest will post the revised Whistleblower Policy to its corporate website to further encourage and promote reports regarding alleged ethics/legal violations, among other things.

13

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

In addition, Honest acknowledges that the Stockholders' initiation and maintenance of the Derivative Matters was a material factor in the adoption of certain corporate governance policies enacted and other changes made at Honest during the pendency of the Derivative Matters, as set forth fully in § II of Exhibit A and summarized as follows:

(a)     The departure of Nick Vlahos as CEO, and the appointment of Carla Vernón as Honest's new CEO;

(b)     The appointment of Michael Barkley, Alissa Hsu Lynch, Andrea Turner, and Carla Vernón to the Board;

(c)     The appointment of John R. Hartung—who possesses extensive accounting and financial management expertise—to the Board's Audit Committee;

(d)     Amendments to the Audit Committee Charter dated March 8, 2024 and March 6, 2025;

(e)     Amendments to the Compensation Committee Charter dated March 8, 2024;

(f)     Amendments to the Nominating and Corporate Governance Committee Charter dated March 8, 2024; and

(g)     Amendments to the Company's Corporate Governance Guidelines dated March 8, 2024.

## V.     THIS COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.     Legal Standards for Preliminary Approval

Rule 23.1 provides that a stockholder derivative action "shall not be dismissed or compromised without the approval of the court." Fed. R. Civ. P. 23.1(c). "In such cases, courts in this Circuit have generally used the two-step approval process employed in class actions." *Basaraba v. Greenberg*, No. 2:13-cv-05061-PSG (SHx), 2014 WL 12591677, at *2 (C.D. Cal. Nov. 10, 2014); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, No. 08-cv-4966 SC, 2011 WL 13156644, at *2 (N.D. Cal. Aug.

14

26, 2011).  As such, a court first must determine whether the proposed settlement merits preliminary approval. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given, a court must determine whether final approval is warranted. *Id.*

During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Trust Inc.*, No. 13-cv-04921-JST, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).  Courts must therefore consider "whether the proposed settlement is fundamentally fair, reasonable, and adequate . . . such that it merits an initial presumption of fairness." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 2015 U.S. Dist. LEXIS 32212, at *15 (N.D. Cal. Mar. 13, 2015) (internal citations omitted).

The "'principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest.'" *In re Ceradyne, Inc.*, No. SACV 06-919-JVS (PJWx), 2009 WL 10671494, at *2 (C.D. Cal. June 9, 2009) (quotation omitted).  Courts may also consider "a variety of factors as the particular facts of a case demand[,]" including: (i) the amount offered in settlement; (ii) the strength of plaintiff's case; (iii) the stage of the proceedings; and (iv) the expense and complexity of further litigation. *In re Pinterest Deriv. Litig.*, 2022 U.S. Dist. LEXIS 28366, at *10-11 (N.D. Cal. Feb. 16, 2022) (citing *Linney v. Cellular Ak. P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)); *see also Moore v. Verb Tech. Co., Inc.*, CV 19-8393-GW-MAAx, 2021 WL 11732976, at *3 (C.D. Cal. Mar. 1, 2021). Furthermore, "[t]o determine whether a proposed settlement is within the range of possible approval," the "court also must satisfy itself that the settlement is not the product of collusion among the negotiating parties." *Hewlett-Packard*, 2015 U.S. Dist. LEXIS 32212, at *12, *15.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

Indeed, a "strong presumption of fairness" attaches to a settlement (like this one) that is the product of arm's-length negotiations between experienced and well-informed counsel. *Van Der Gracht Rommerswael v. Auerbach*, SACV 18-00236 AG (JCGx), 2018 U.S. Dist. LEXIS 224500, at *9 (C.D. Cal. Nov. 5, 2019).

### B.    The Settlement Satisfies the Standards for Preliminary Approval

####    1.    The Settlement Confers Substantial Benefits upon the Company and Current Honest Stockholders

As detailed above, the Court's primary consideration when evaluating a settlement is the benefit conferred on the company. *See Ceradyne*, 2009 WL 10671494, at *2. It is well-understood that "a corporation may receive a 'substantial benefit' from a derivative suit […] regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). Accordingly, "[c]ourts have recognized that corporate governance reforms . . . provide valuable benefits to public companies." *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA-(JCS), 2008 U.S. Dist. LEXIS 117351, at *10 (N.D. Cal. Dec. 19, 2008).

The Settlement undoubtedly "confers a substantial benefit upon Honest and Current Honest Stockholders," as the Board agrees. Stip., § IV. The Settlement provides the critical and targeted corporate governance Reforms outlined herein, *supra*, §IV at 11-18. In particular, the Reforms achieved here go to the heart of the alleged wrongdoing and seek to strengthen Honest's overall corporate governance and internal controls, which will prevent the kinds of misconduct alleged in the Derivative Matters, as well as provide real, substantial, and long-lasting benefits for Honest and its stockholders. *See id*.

The underlying allegations against the Defendants detail failures with inventory control, public financial disclosures, internal controls, and executive compensation—all of which alleged wrongdoings are redressed directly and indirectly by the Reforms. For example, to ensure that Honest maintains proper inventory management controls,

16

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

the Reforms provide that the SVP-SC will be tasked with ensuring that Honest maintains complete and accurate records of all sales orders, fulfillments, and returns and properly reports and recognizes revenue based on sales, inventory, and returns. Stip., Ex. A, §I.1(a). Further, the management-level Disclosure Committee shall now be tasked with, *inter alia*, ensuring that Honest's disclosures to its stockholders or the investment community are timely, accurate and complete, and fairly present Honest's financial condition and results of operations, which will increase investor confidence in the Company's public disclosures and protect against the issuance of materially false and misleading information. *Id.* at §I.2(a). Additionally, the Derivative Matters allege that the Board lacked independence and failed to adequately exercise their oversight. The Settlement provides for amendments to the Corporate Governance Guidelines to ensure at least a majority of the Board meets heightened criteria for director independence. *Id.* at §I.6. The Reforms also provide for director and employee training and education and enhanced protections for whistleblowers all targeted at compliance and risk assessment. *Id.* at §I.7-9.

Courts uniformly recognize that governance reforms, like those achieved here, which meaningfully enhance Board and executive level oversight, confer substantial value to the Company through increased "market value" and investors who "likely will view such reforms as an additional reason to purchase the stock." *In re Apple Computer, Inc. Deriv. Litig.*, C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195, at *10 (N.D. Cal. Nov. 5, 2008); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 461 & n.43 (5th Cir. 1983) (improvements in "the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor" ).

In sum, the benefits of strong and targeted Reforms favor preliminary approval.

**2.      Strength of the Claims and the Costs and Risks of Further Litigation**

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

When evaluating a settlement, courts in this Circuit consider "'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation.'" *In re Wells Fargo & Co. S'holder Deriv. Litig.*, No. 16-cv-05541-JST, 2019 U.S. Dist. LEXIS 240004, at *19-20 (N.D. Cal. May 14, 2019) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). While Stockholders and their counsel believe the claims alleged in the Derivative Matters are meritorious, derivative litigation is "notoriously difficult and unpredictable," strongly favoring settlement as a matter of public policy. *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *7.

From the outset, Stockholders respectively faced risks that the Derivative Matters might not have withstood challenges at the pleading stage, especially given Rule 23.1's heightened standards for pleading demand futility or wrongful demand refusal with particularity. *See In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 281-82 (S.D.N.Y. Nov. 17, 2015) ("The doctrine of demand futility … make[s] shareholder derivative suits an infamously uphill battle for plaintiffs."); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (establishing demand futility requires "extraordinary conditions"); *Norfolk Cnty. Ret. Sys. v. Jos. A. Bank Clothiers, Inc.*, No. 3443–VCP, 2009 WL 353746, at *7 n.51 (Del. Ch. Feb. 12, 2009) ("Demonstrating wrongful refusal is more daunting than demonstrating demand futility."), *aff'd*, 977 A.2d 899 (Del. 2009).

Even if Stockholders ultimately succeeded at the pleading stage, Defendants likely would have fiercely defended the Derivative Matters through motions for summary judgment and trial(s). Stockholders would have faced the high costs associated with lengthy and complex litigation, including voluminous discovery and depositions. Delaware's strong business judgment presumption would afford Defendants powerful defenses that would be very difficult to overcome. *See, e.g., In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005). Indeed,

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

for these reasons, "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Even a favorable judgment at trial(s) would undoubtedly result in extensive post-trial motions and appeal(s). *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (evidence insufficient to support jury verdict for shareholders of $277 million). Moreover, the amount of recoverable damages would have posed significant issues. *See In re Lloyd's Am. Tr. Fund Litig.*, 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages … is a complicated and uncertain process, typically involving conflicting expert opinions," making the outcome "highly unpredictable."); *In re AOL Time Warner S'holder Deriv. Litig.*, Master File No. 02 Civ. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *15 (S.D.N.Y. Sep. 6, 2006) (the difficulty of "proving highly contested damages" supports derivative settlement approval).

The Settlement eliminates these and other risks, including the risk of no recovery after potentially years of expensive and protracted litigation, while ensuring that the Company and Current Honest Stockholders obtain immediate, long-lasting, and substantial benefits through the Reforms. Additionally, the Settlement frees up Company resources and time that would otherwise be spent on litigating the Derivative Matters to instead strengthen the Company's internal controls and operations. *See AOL*, 2006 U.S. Dist. LEXIS 63260, at *15-16 ("Termination of the litigation at this stage of the proceedings 'obviat[es] the expenditure of any future time and expense in connection with this action,' and will allow the Company to direct its full attention to its substantive business."). Accordingly, resolution of the Stockholders' claims is beneficial at this stage.

Weighed against the risks and expense of further litigation, the substantial benefits conferred upon the Company and Current Honest Stockholders by the

19

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

Settlement demonstrate that the recovery here is fair, reasonable, and adequate. Thus, the Settlement should be preliminarily approved.

### 3. The Proposed Settlement is a Product of Informed, Arm's-Length Negotiations

The Ninth Circuit has made clear that significant weight should be attributed to the parties' belief that the litigation should be settled on the proposed terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Pac. Enters.*, 47 F.3d at 378; *see also Moore*, 2021 WL 11732976, at *6 (settlement is supported by "the fact [counsel] are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks, also cuts in favor of finding the settlement procedurally robust and the product of arm's length negotiations.").

Here, the Settlement was negotiated between experienced and competent counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses in the Derivative Matters and is the product of significant give-and-take by the Parties following arm's-length negotiations.

To fully inform themselves, Stockholders' Counsel conducted extensive investigation and analysis, including, *inter alia*: (i) reviewing and analyzing Honest's press releases, public statements, and filings with the SEC; (ii) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings and orders in the Securities Class Action; (iv) researching the applicable law with respect to the claims alleged and the potential defenses thereto; (v) preparing and filing initial complaints in the Derivative Actions; (vi) researching, preparing and sending the Demands and subsequent related correspondence, including correspondence related to the tolling agreements executed in connection with the Demands; (vii) researching and

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

evaluating factual and legal issues relevant to the claims in the Derivative Matters; (viii) engaging in settlement negotiations with Defendants' counsel regarding the specific facts, and perceived strengths and weaknesses of the Derivative Matters, and other issues in an effort to facilitate negotiations; (ix) researching the Company's corporate governance structure in connection with settlement efforts; (x) preparing comprehensive written settlement demands and modified demands over the course of the Settling Parties' settlement negotiations; (xi) attending the full-day Mediation; (xii) negotiating and drafting the Stipulation; and (xiii) preparing the motions for preliminary and final approval of the Settlement. Stip., §II. Accordingly, Stockholders and Stockholders' Counsel were well positioned to negotiate effectively and only entered into the Settlement after undertaking substantial efforts to ensure the Settlement is in the best interest of Honest and Current Honest Stockholders.

Further, the Settling Parties' arm's-length negotiations were conducted on both sides by highly qualified counsel with significant experience in stockholder derivative litigation. Thus, the Settling Parties' good-faith, arm's-length negotiations support the presumption that the Settlement is fair and should be preliminarily approved. *See Nat'l Rural Telecomm'ns Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

## VI.   <u>NOTICE SATISFIES RULE 23.1(c) AND DUE PROCESS</u>

Notice of a proposed stockholder derivative settlement must be given to stockholders "in the manner that the court orders." Fed. R. Civ. P. 23.1(c). Notice to stockholders "must be 'reasonably calculated under all the circumstances to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lloyd v. Gupta*, No. 15-cv-04183-MEJ, 2016 U.S. Dist.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

96166, at *19-20 (N.D. Cal. Jul. 22, 2016) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Stipulation provides that within ten business days after the entry of an order by the Court preliminarily approving the settlement, Honest shall: (i) post a copy of the Notice and the Stipulation and exhibits thereto on the Investor Relations page of the Company's website; (ii) publish the Summary Notice in a press release with *GlobeNewswire* or once in *Investors' Business Daily* or a similar publication with national distribution; and (iii) file with the U.S. Securities and Exchange Commission ("SEC") the Notice and Stipulation and exhibits thereto as exhibits to an SEC Form 8-K (or other appropriate filing).

This notice program has been approved as sufficient by courts in connection with the settlements of numerous stockholder derivative actions across the country, including in this Court. *See e.g.*, *In re MRV Communs., Inc. Derivative Litig.*, 2013 U.S. Dist. LEXIS 86295, at *6 (C.D. Cal. June 6, 2013) (approving settlement where notice was filed with a Form 8-K, published on company website, and published once in *Investor's Business Daily*); *In re Rambus Inc. Deriv. Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *7 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice was published on company website and in a press release carried on *Business Wire*, and filed in an 8-K with the SEC); *In re PMC-Sierra, Inc. Deriv. Litig.*, No. C-06-05330-RS, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice via filing with the SEC, posting on company's website, and single day publication in the national edition of *Investor's Business Daily*); *In re Biopure Corp. Deriv. Litig.*, 2009 U.S. Dist. LEXIS 148025, at *3 (D. Mass. Jul. 24, 2009) (approving derivative settlement where notice program consisted of a Form 8-K SEC filing, a posting on the company's website, and a press release); *Allred v. Walker*, 19-cv-10641 (LJL), 19-cv-10876 (LJL), 2021 U.S. Dist. LEXIS 236249, at *8 (S.D.N.Y. Dec. 9, 2021) (approving settlement after notice was published on

22

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

*GlobeNewswire*, in an SEC Form 8-K filing, and on the Company's website); *Bushansky v. Armacost*, 2014 WL 2905143, at *7 (N.D. Cal. June 25, 2014) (requiring a notice plan to include a link on defendant's investor relations website that leads to a webpage to be displayed for a minimum of thirty days, a press release to be issued by defendant, and a Form 8-K filing with the SEC).

Accordingly, the proposed form and plan of Notice warrant this Court's approval because it constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1(c), due process, and any other applicable law.

## VII.  **PROPOSED SCHEDULE**

In connection with preliminary approval of the Settlement, California Federal Plaintiffs request that the Court establish dates by which the notice of the Settlement will be disseminated to Current Honest Stockholders, by which they may comment on the Settlement, and on which the Settlement Hearing will be held. California Federal Plaintiffs respectfully propose the following schedule:

| EVENT | DEADLINE |
| --- | --- |
| Posting the Notice and the Stipulation and exhibits thereto on the Investor Relations page of the Company's website<br><br>Publishing the Summary Notice in a press release with *GlobeNewswire* or once in *Investors' Business Daily* or a similar publication with national distribution<br><br>Filing with the SEC the Notice and Stipulation and exhibits thereto as exhibits to an SEC Form 8-K (or other appropriate filing) | Within ten (10) business days after the Court enters the Preliminary Approval Order |
| Defendants' Counsel shall file with the Court an appropriate affidavit or | Within twenty (20) days after the entry of the Preliminary Approval Order |

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT

| | |
|---|---|
| declaration with respect to compliance with the notice program | |
| Deadline for California Federal Plaintiffs to file all papers in support of final approval of the Settlement and the Fee and Expense Amount | At least twenty-eight (28) days prior to the Settlement Hearing |
| Deadline for Current Honest Stockholders to file written objections | At least twenty-one (21) days prior to the Settlement Hearing |
| Deadline to file replies to objections by Current Honest Stockholders, if any | At least seven (7) days prior to the Settlement Hearing |
| Final Settlement Hearing | Approximately sixty (60) days after entry of the Preliminary Approval Order, at the Court's convenience |

## VIII. CONCLUSION

Given the substantial benefits the Settlement provides to Honest and Current Honest Stockholders, the California Federal Plaintiffs respectfully request that the Court enter the Settling Parties' [Proposed] Preliminary Approval Order and: (i) preliminarily approve the Settlement; (ii) approve the form and manner of the Notice; and (iii) schedule a date for the Settlement Hearing to consider final approval of the Settlement.

Dated: March 26, 2026

Respectfully Submitted,

**THE BROWN LAW FIRM, P.C.**

*/s/ Robert C. Moest*
Robert C. Moest, Of Counsel (State Bar No. 62166)
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Email: RMoest@gmail.com

Timothy Brown
**THE BROWN LAW FIRM, P.C.**

24

767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204

Laurence M. Rosen
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684

*Co-Lead Counsel for the California Federal Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned counsel of record for the California Federal Plaintiffs certifies that this brief contains 6,993 words, which is in compliance with the word limit set by Local Rule 11-6.1.

Dated: March 26, 2026

/s/ Robert C. Moest
Robert C. Moest

25

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
DERIVATIVE SETTLEMENT

### <u>CERTIFICATE OF SERVICE</u>

I, Robert C. Moest, hereby declare the following under penalty of perjury:

I am an attorney at The Brown Law Firm, P.C., with offices at 2530 Wilshire Boulevard, Second Floor, Santa Monica, California 90403. I am over the age of eighteen.

On March 26, 2026, I electronically filed in the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to counsel of record.

Executed on March 26, 2026.

*/s/ Robert C. Moest*
Robert C. Moest

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT